IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony L. Mann, ) | C/A No. 0:14-1647-RMG-PJG |
| )  Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Captain C. Williams; Captain Rhonda Abston, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Anthony L. Mann, a self-represented state prisoner, filed this action against the defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 68.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Mann of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 70.) Mann filed a response in opposition to the motion[1] (ECF No. 94) and the defendants replied (ECF No. 95). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

---

[1] To the extent that Mann raises additional claims in his response to the defendants' motion, such as a claim that he was denied soap and a wash rag with which to decontaminate himself, Mann has not filed a proper motion to amend his Complaint to include any additional claims. Accordingly, such claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F.Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

Page 1 of 20



**BACKGROUND**

Mann's claims stem from an incident that occurred on March 20, 2011, during the time Mann was housed at Perry Correctional Institution. Mann alleges that, on this date, he saved part of his breakfast to take with medication later in the day. Officer McBride, a South Carolina Department of Corrections ("SCDC") officer who is not a defendant in this action, noticed the food in Mann's cell and directed Mann to relinquish the food. When Mann refused, Officer McBride reported the incident to Defendant Captain Rhonda Abston, who allegedly activated a forced cell movement team so as "to strip Plaintiff out and place him on Nutriloaf meal service." (Compl., ECF No. 1 at 2.) Prior to Mann's removal from his cell, Defendant Captain C. Williams purportedly approached Mann's cell door and asked Mann to come to the door to speak with him. According to Mann, he complied with Williams's request, at which time Williams instructed the control room to crack open Mann's cell door and then sprayed Mann in the face with chemical munitions using an MK-9 crowd control fogger. Mann alleges that the water in his cell was subsequently turned off and that he was not allowed to decontaminate. Mann alleges that, per Defendant Abston's orders, he remained in his stripped-down cell for four days without being given the opportunity to decontaminate and that he was fed only nutriloaf. Mann seeks monetary damages and injunctive relief. (See generally Compl., ECF No. 1.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing



to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).



B.    **Defendants' Motion**

1.    **Exhaustion of Administrative Remedies**

The defendants first argue that Mann failed to exhaust his administrative remedies with regard to his claims. Mann alleges that he timely filed a Step 1 grievance regarding the incident described in his Complaint. (See Compl., ECF No. 1 at 3; see also Step 1 grievance, ECF No. 30-2; Mann Dep. 127:13-21, ECF No. 68-2 at 7.) He further alleges in his Complaint, in his response in opposition to the defendants' motion, and in a sworn declaration that, despite filing the Step 1 grievance, he has yet to receive any response to that grievance. (Compl., ECF No. 1 at 3-4; Pl.'s Resp. Opp'n Summ. J., ECF No. 94 at 11; Mann Decl. ¶¶ 1-3, ECF No. 30 at 3-4.) The defendants reassert that Mann failed to file a Step 1 grievance; however, they argue that even if Mann had filed a Step 1 grievance—of which they claim to have no record—he did not properly complete the grievance process in that he failed to file a Step 2 grievance. (See Defs.' Mem. Supp. Summ. J., ECF No. 68-1 at 5-6; see also Hallman Aff. ¶¶ 4-5, 7, ECF No. 68-7 at 1-2.)

The court previously concluded that "[Mann's] verified complaint creates a genuine issue of material fact as to whether [Mann] filed a Step One grievance." (Order, ECF No. 39 at 2.) The court also found that "[i]f [Mann] filed a Step One grievance and never received a response, he has exhausted his administrative remedies." (Id.) (citing Williams v. Loyd, C/A No. 2:09-2289-JFA-RSC, 2010 WL 3609790, at *4 (D.S.C. Apr. 28, 2010) ("When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA.")). Accordingly, on this record, the defendants have not shown that they are entitled to summary judgment on this basis. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir.



2005) (holding that it is the defendants' burden to establish that a plaintiff failed to exhaust his administrative remedies).[2]

### 2. Official Capacity Claims

To the extent that Mann is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are both SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities for monetary damages, they are immune from suit. Will, 491 U.S. at 70-71; see

---

[2] The defendants also argue that Mann has not presented any evidence of a grievance filed with regard to his medical claims. However, as the Step 1 grievance allegedly submitted by Mann and discussed above (ECF No. 30-2) refers to actions taken against Mann following the deployment of chemical munitions to prevent "relief from the burning," the court will address Mann's Eighth Amendment claim of deliberate indifference to his medical needs on the merits.



also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 3.     Eighth Amendment—Excessive Force

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Mann must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).



When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them

PJG

to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

### a.  Deployment of Chemical Munitions

Mann's allegations of excessive force arise from a March 20, 2011 incident that, according to Mann, began when an SCDC officer directed Mann to relinquish food that Mann had in his cell to take with his medication. Specifically, Mann alleges that Defendant Williams then used excessive force when he allegedly sprayed Mann in the face with chemical munitions.[3] As stated above, Mann alleges that Williams purportedly approached Mann's cell door and asked Mann to come to the door to speak with him. According to Mann, he complied with Williams's request, at which time Williams instructed the control room to crack open Mann's cell door; Williams then allegedly sprayed Mann in the face with chemical munitions using an MK-9 crowd control fogger.

In support of their motion for summary judgment, the defendants have provided incident reports, use of force reports, a "min narrative," Mann's medical history summary, excerpts from Mann's deposition, and affidavit testimony from Defendants Williams and Abston and Corrections

---

[3] The defendants include excerpts from Mann's November 17, 2014 deposition at which time Mann clarified that his excessive force claim was solely against Defendant Williams.



Officer Chad Binkley. Mann also provides support for his response in opposition in the form of affidavit testimony, excerpts from his deposition, medical records, an alternative meal service request, and disciplinary reports.

Applying the Whitley factors to the facts viewed in the light most favorable to Mann, the court concludes that no reasonable jury could find that the amount of force used was unconstitutionally excessive. Importantly, Mann acknowledges that he had food in his room—which, according to Defendant Abston, was against SCDC policy—and does not dispute that he refused to relinquish it. Mann also does not dispute Abston's affidavit testimony that he was in violation of SCDC policy by keeping uneaten food in his room. Rather, Mann argues that he needed to keep food in his cell to take with his medication; however, he does not allege that he provided any doctor's instructions or orders to the SCDC officers at the time of the incident, nor does he provide any such evidence to the court in support of his allegations other than pointing to a medical summary that post-dates the March 20, 2011 incident demonstrating only that Mann *requested* additional food because his medication increased his hunger. (See Med. Summ., ECF No. 94-2 at 4.)

The defendants' evidence and affidavit testimony includes much discussion regarding Mann's allegedly destroying his mattress and using his mattress to barricade his cell door and food flap, which the defendants argue necessitated Williams's having to contact the control room to partially open Mann's cell door so that Williams could effectively deploy his chemical munitions. In his response in opposition—which Mann declares under penalty of perjury—Mann disputes that he destroyed his mattress or any other property. For the reasons set forth below, however, this dispute is not material and does not preclude summary judgment for the defendants.

The defendants provide affidavit testimony that Williams gave Mann directives to back away from the cell door. (Williams Suppl. Aff. ¶ 4, ECF No. 95-2 at 1; Binkley Aff. ¶ 5, ECF No. 95-3 at 2.) When Mann ignored these directives, Williams "sprayed a burst of chemical munitions into Mann's cell and towards Mann's facial area. Mann then complied with all further directives." (Williams Suppl. Aff. ¶ 4, ECF No. 95-2 at 1-2.) Mann does not refute the defendants' testimony on this issue. Accordingly, the undisputed evidence in the record shows at the very least that Mann's disobedience of Williams's directives and refusal to surrender his cache of unauthorized food necessitated the use of the mace. Bailey, 736 F.2d at 969-70. Thus, even viewing the facts that are disputed in the light most favorable to Mann, no reasonable jury could find that Williams's perception of Mann's behavior was unreasonable. See Whitley, 475 U.S. at 321-22. Moreover, examining the extent of injury actually inflicted, the court observes that Mann was seen by medical personnel following the incident, where it was noted that Mann's only complaint was burning in his eyes. Mann was instructed to flush his eyes with water and to follow-up with the medical department if his condition worsened. (Med. Records, ECF No. 68-6 at 7.) The medical records do not indicate that any follow-up treatment with the medical department occurred or was requested, and Mann does not allege that he requested relief from the medical department and was denied. Accordingly, the court concludes that no reasonable jury could find that the use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 37; see also Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

b.   **Denial of Decontamination from Chemical Munitions**

Mann also asserts an Eighth Amendment claim based on his allegation that he was prevented from decontaminating and denied a shower for three days following the deployment of chemical munitions. Courts in this circuit have analyzed such claims as ones asserting excessive force. Williams v. Benjamin, 77 F.3d 756, 764-65 (4th Cir. 1996) (analyzing plaintiff's claim that he was restrained without the opportunity to wash after being maced as an excessive force claim).[4]

In his Complaint, Mann alleges that he was prevented from decontaminating and denied a shower until March 24, 2011, following the March 20, 2011 deployment of chemical munitions. In support of his contentions, Mann provides an SMU daily evaluation sheet purportedly showing that Mann did not receive a shower on March 21, 22, or 23, 2011, as well as a declaration from an inmate who apparently witnessed the alleged events. (See ECF No. 94-2 at 13; McCoy Decl., ECF No. 94-2.) He also specifically alleges that his cell water was immediately shut off following the incident. He concedes in his response in opposition that a nurse did come to his cell following the incident, but alleges that she did not perform a physical examination or take any of his vital signs. (Pl.'s Resp. Opp'n Summ. J., ECF No. 94 at 10.)

Significantly, Mann's allegations as to his access to water with which to decontaminate himself have evolved as the litigation progressed. As stated above, in his verified Complaint Mann alleges that, following Williams's deployment of chemical munitions directly into Mann's face, the

---

[4] Alternatively, the Fourth Circuit has also analyzed such a claim as one asserting medical indifference. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (analyzing plaintiff's claim against corrections officers who allegedly failed to permit decontamination and provide medical treatment after he was pepper sprayed as a deliberate indifference to medical needs claim). In the instant Complaint, it appears that Mann is attempting to bring his alleged denial of decontamination as an excessive force claim, as in Williams. However, to the extent that Mann intended to bring this claim as one alleging deliberate indifference to his medical needs, it is addressed below.

Page 11 of 20



water to Mann's cell was "immediately shut off to prevent any form of decontamination." (Compl., ECF No. 1 at 3.) However, in his response in opposition to the defendants' motion for summary judgment—which Mann declares under penalty of perjury—he states that when he "sought some form of relief" from the chemical munitions "by utilizing the little amount of water that comes from the sink in his cell," Defendant Williams then cut off the water supply to the cell. (Pl.'s Resp. Opp'n Summ. J., ECF No. 94 at 8.) Mann's version of events described during his deposition provides additional information when he concedes that the nurse advised him to rinse the chemical munitions off in the sink and that "[t]he sink was on for about five or six minutes, and then as soon as [the nurse] left they said I was flooding out and cut it right back off." (Mann Dep. 126:17-19, ECF No. 94-2 at 18.)

The Fourth Circuit has expressly found that the unexplained denial of an opportunity for an inmate to wash off mace that is causing painful burning prior to the imposition of a lengthy confinement in restraints can support an inference of the wanton infliction of pain in violation of the Eighth Amendment. Williams v. Benjamin, 77 F.3d 756, 764 n.4 (4th Cir. 1996) (noting that the fact that prisoners are permitted to wash off mace shortly after its application has been a significant factor in upholding its use) (citing Soto v. Dickey, 744 F.2d 1260, 1266 (7th Cir. 1984)). However, the record in the instant case is distinguishable from Williams because, as Mann himself testifies, he had access to water with which to decontaminate for "five or six minutes." See Arnold v. South Carolina Dep't of Corr., Civil Action No. 9:13-cv-01273-JMC, 2014 WL 7369632, at *7 (D.S.C. Dec. 23, 2014) (acknowledging Williams, but finding no constitutional violation following the deployment of chemical munitions when plaintiff had access to running water in his cell); Mitchell v. South Carolina Dep't of Corr., Civil Action No. 6:09-1010-RBH-KFM, 2010 WL 5174009, at *3



(D.S.C. Nov. 16, 2010) (finding no constitutional violation where plaintiff was afforded running water to wash off chemical spray), adopted by 2010 WL 5173863 (D.S.C. Dec. 15, 2010); Brown v. Walker, Civil Action No. 9:09-3064-RMG-BM, 2010 WL 4484185, at * 5 (D.S.C. Oct. 6, 2010) (same), adopted by 2010 WL 4482100 (D.S.C. Nov. 1, 2010). Accordingly, the defendants are entitled to summary judgment on Mann's Eighth Amendment excessive force claim with regard to his decontamination from chemical munitions.

    **4.    Eighth Amendment—Deliberate Indifference to Medical Needs**

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, __ F.3d __, No. 13-7606, 2015 WL 1062747, at *5 (4th Cir. Mar. 12, 2015) (quoting Brice v. Va Beach Corr. Ctr.,



58 F.3d 101, 105 (4th Cir. 1995)).  Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 2015 WL 1062747, at *5 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.  To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Courts have recognized that "lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for." O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 ("A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that

she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

As an initial matter, the named defendants are all non-medical personnel. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

In support of their motion for summary judgment, the defendants have provided Mann's medical records, a review of which shows that Mann was seen by a nurse following Williams's deployment of chemical munitions, and which Mann himself acknowledges. (Med. Records, ECF No. 68-6 at 7; Pl.'s Resp. Opp'n Summ. J., ECF No. 94 at 10.) In these records, the nurse noted that Mann's only complaint was burning in his eyes, and instructed Mann to flush his eyes with water and to follow-up with the medical department if his condition worsened. (Med. Records, ECF No. 68-6 at 7.) As discussed above, Mann provides sworn testimony acknowledging that he was given access to running water in his cell with which to decontaminate for "five or six minutes." (Mann Dep. 126:17-19, ECF No. 94-2 at 18.) Moreover, the medical records do not indicate that any follow-up treatment with the medical department occurred or was requested, and Mann does not allege that he requested relief from the medical department and was denied. Although Mann alleges



that the nurse's examination was insufficient, as stated above, Mann does not have a claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. Moreover, the nurse is not a defendant in this matter. Accordingly, on this record, no reasonable jury could find that either of the non-medical personnel defendants failed to promptly provide Mann with needed medical treatment, deliberately interfered with that medical treatment, or tacitly authorized or were indifferent to a prison medical staff's misconduct. Mann's claim that the defendants were deliberately indifferent to his medical needs therefore must fail.

### 5. Deliberate Indifference—Conditions of Confinement

Mann also alleges that his constitutional rights were denied when his cell was stripped of personal belongings, he was stripped of his clothing, and he was fed only nutriloaf for three days. "The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety



of the inmates." Farmer, 511 U.S. at 832.  As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).  Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions.  See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81.  However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Notwithstanding Mann's allegations regarding his conditions of confinement, he has failed to demonstrate that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the alleged conditions.  See De'Lonta, 330 F.3d at 634 (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement).  As discussed above, Mann acknowledges that he had food in his room and does not dispute that he refused to relinquish it.  In support of their motion for summary judgment, the defendants' provide affidavit testimony from Defendant Abston in which she avers that Mann was in violation of SCDC policy by keeping uneaten food in his room and that, as a result of this infraction, she issued a directive to place Mann on nutriloaf meals for seventy-two hours.  (Abston Aff. ¶ 5, ECF No. 68-3



at 2; see also Alternative Meal Service, ECF No. 94-2 at 7). Courts have found that claims regarding confinement in a strip cell for a short duration and the use of nutriloaf do not rise to the level of a constitutional violation. See Sweet v. South Carolina Dep't of Corr., 529 F.2d 854, 865 (4th Cir. 1975) ("[C]onfinement in the 'strip cell' has often been found inoffensive under the constitutional provision if the confinement is for a short duration . . . ."); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (finding that inmate's complaint regarding the use of nutriloaf does not rise to the threshold level of a constitutional deprivation); Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (finding that the plaintiff did not state an Eighth Amendment claim based on his dietary restrictions for high blood pressure and being fed "nutraloaf" for 20 days during isolation); Gates v. Huibregtse, 69 F. App'x 326, 327 (7th Cir. 2003) (finding where an inmate raised a claim regarding his placement on a nutriloaf diet, that while food served in prison must be nutritious, it does not have to be delicious or appetizing). Accordingly, the defendants are entitled to summary judgment on these claims.

**C.     Other Claims**

To the extent Mann is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009). Further, to the extent that Mann seeks injunctive relief in the form of placement (or, in this instance, non-placement) in a particular prison, there is no constitutional right for a prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another



within the state prison system"); McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment be granted.  (ECF No. 68)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 23, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).